UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-22670-RAR
(18-CR-20743-RAR-2)

**TARRESSE LEONARD**,

Movant,

v.

**UNITED STATES OF AMERICA**,

Respondent.

_____/

## ORDER DENYING MOTION TO VACATE

**THIS CAUSE** comes before the Court on Movant Tarresse Leonard's Motion to Vacate under 28 U.S.C. § 2255. *See* Motion to Vacate ("Mot.") [ECF No. 1]. Respondent filed a Response to the Motion, *see* Response ("Resp.") [ECF No. 10], and Movant filed a Reply to that Response, *see* Reply [ECF No. 11]. Movant then filed a "Motion for Leave to Amend Original 2255 Motion" which seeks to supplement his § 2255 Motion with an additional claim. *See* Supplemental Motion ("Suppl. Mot.") [ECF No. 14].[1] Having reviewed the pleadings, Movant's criminal docket, and the applicable law, the Court finds that Movant has failed to demonstrate he is entitled to relief and, therefore, **DENIES** the § 2255 Motion and the Supplemental Motion.

## PROCEDURAL HISTORY

Movant was charged by Superseding Indictment with three counts: Possession of Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count 4); Possession

---

[1] Movant's original Supplemental Motion was filed with the Court on February 27, 2023, but Movant failed to sign it. [ECF No. 12] at 8. The Court will strike this unsigned motion and consider only Movant's signed Supplemental Motion, [ECF No. 14]. *See* FED. R. CIV. P. 11(a) ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.").

with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) (Count 5); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 6). *See* Superseding Indictment, *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. May 24, 2019), ECF No. 70. On June 28, 2019, a jury found Movant guilty of Count 4 of the Superseding Indictment and not guilty of Counts 5 and 6. *See* Verdict, *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. May 24, 2019), ECF No. 134.

After Movant's trial concluded, the United States Probation Office prepared a Presentencing Investigation Report ("PSI") for Movant, which found, among other things, that Movant qualified for an enhanced sentence under the Armed Career Criminal Act ("ACCA"). *See* PSI, *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. Aug. 30, 2019), ECF No. 169 ¶ 24. The Probation Office identified six qualifying offenses under ACCA: three separate state-court convictions for selling, delivering, or possessing with intent to sell cocaine within 1,000 feet of a school (Case Nos. F04-14535, F07-32644, and F07-43306); one conviction for "resisting an officer without violence and burglary of an unoccupied dwelling" (Case No. F10-2671); one conviction for "attempting fleeing/elude marked police officer at high speed, child neglect with no great harm, and resisting an officer without any violence" (Case No. F11-16631); and one conviction for "aggravated assault on a police officer and/or firefighter, and fleeing or eluding [a] police officer at high speed" (Case No. F13-9735). *Id.*[2] Because of this enhancement, Probation determined that Movant was facing a mandatory minimum sentence of 15 years and guidelines sentencing range of 235 to 293 months. *See id.* ¶¶ 108–09.

---

[2] To qualify for an enhanced sentence under ACCA, the defendant must "[have] three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1); *see also* United States Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.4(a) ("A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.").

Movant, through counsel, objected to Probation's conclusion that he qualified for the armed career criminal sentencing enhancement.  *See* Objs. to PSI ("Obj."), *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. Oct. 4, 2019), ECF No. 174; Mem. in Supp. of Objs. ("Obj. Mem."), *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. Oct. 9, 2019), ECF No. 181.  First, Movant argued that his three state-court drug convictions were (1) not "serious drug offense[s] as defined in the ACCA," and, even if they were, (2) they should only be counted as one discrete offense since they were all sentenced together "as one case."  Obj. at 3; Obj. Mem. at 5–6.  Second, Movant asserted that the three other convictions listed in the PSI no longer qualified as "crimes of violence" after the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015).

At sentencing, the Court found that, despite Movant's objections, Movant possessed "at least four qualifying predicate offenses" to be classified as an armed career criminal: the three instances where Movant sold cocaine (Case Nos. F04-14535, F07-32644, and F07-43306) and Movant's conviction for aggravated assault (Case No. F13-9735).  Sentencing Tr., *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. Dec. 4, 2019), ECF No. 192 at 9:20.[3]  The Court explicitly noted that there was binding Eleventh Circuit case law confirming that all four of these convictions were either "crimes of violence" or "serious drug offenses."  *Id.* at 7:13–22 ("[The Eleventh Circuit held that] violations of Section 893.13(1) of the Florida Statutes . . . qualify under 18 U.S.C. § 924(e) as serious drug offenses[.]"); *id.* at 10:17 ("F-139735 by case law would qualify.").  The Court also rejected Movant's contention that all three of the drug offenses should be counted as one offense merely because all of those cases were resolved at the same time pursuant to a global

---

[3]  The Court didn't explicitly address the other two convictions listed as qualifying offenses in the PSI, but post-*Johnson* caselaw confirms that neither conviction was an ACCA predicate offense.  *See United States v. Esprit*, 841 F.3d 1235, 1241 (11th Cir. 2016) ("Thus, as a categorical matter, a Florida burglary conviction is not a 'violent felony' under ACCA."); *Tribue v. United States*, 929 F.3d 1326, 1330 n.4 (11th Cir. 2019) ("Tribue's prior Florida conviction in 2006 for fleeing and eluding does not qualify as a predicate violent felony under the ACCA.").

plea agreement.  *See id.* at 16:8–14 ("[T]here were three arrests, the charging decisions, the global sentence, the sting operation is of no consequence.  We just look to see whether [Movant] was formally arrested three times.  And I think, based on what probation has looked at, and what I saw in his record, that's what happened here.  He had three separate arrests.").  Having determined that ACCA applied, the Court sentenced Movant to a prison term of 240 months.  *See* Judgment, *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. Oct. 11, 2019), ECF No. 183 at 2.

Movant appealed his conviction and sentence to the United States Court of Appeals for the Eleventh Circuit.  *See United States v. Leonard*, 4 F.4th 1134 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2709 (2022).  Movant raised five issues on appeal, but only one of them is relevant to Movant's pending § 2255 motion to vacate: Movant's argument that his "three [cocaine trafficking] convictions should have been scored as one offense because he was sentenced on the same day for all three crimes."  *Id.* at 1148.  The Eleventh Circuit disagreed and concluded that "Leonard's three offenses occurred on different days *and* were separated by intervening arrests.  It does not matter that he was sentenced on the same day for the three crimes."  *Id.* at 1149 (citing *United States v. Wilks*, 464 F.3d 1240, 1244 (11th Cir. 2006)).  Movant filed a petition for writ of certiorari with the United States Supreme Court, but the Court denied Movant's petition on May 16, 2022.  *See Leonard v. United States*, 142 S. Ct. 2709 (2022).  The instant motion was timely filed with the Court on August 18, 2022.  *See* 28 U.S.C. § 2255(f).

## STANDARD OF REVIEW

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited.  A prisoner is only entitled to relief under § 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by

law; or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  Thus, relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).  If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence."  28 U.S.C. § 2255(b).  The § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 954 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).  "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United*

*States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  If "some reasonable lawyer at the trial

could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform

deficiently.  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v.*

*Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance

if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'"  *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting

*Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Strickland*, 466 U.S. at 694.  If a postconviction movant has pled

guilty to the underlying offenses, the prejudice prong is modified so that the movant is instead

required to "show that there is a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59

(1985).

## ANALYSIS

Movant has presented a total of nine claims for the Court to consider—eight from Movant's

§ 2255 motion and one from the Supplemental Motion.  To summarize, Movant alleges that: (1)

his armed career criminal enhancement is illegal since "his [three] prior cocaine-related § 893.13

offense[s] are not 'serious drug offenses,'" Mot. at 13; (2) trial counsel was ineffective for failing

to "object[] to the fact ioflupane had already been removed as a Schedule II substance on

September 2015," *id.* at 17; (3) appellate counsel was ineffective for failing to raise the same

ioflupane argument on direct appeal, *id.* at 19; (4) his "three convictions for 'serious drug

offenses'" should have been considered as one qualifying offense pursuant to the Supreme Court's

decision in *Wooden v. United States*, 142 S. Ct. 1063 (2022), *id.* at 21; (5) the Rule of Lenity

"demands that Mr. Leonard's . . . sentence be vacated, where the Occasion Clause of 924(e) is unconstitutionally vague as clarified in *Wooden*," *id.* at 23; (6) appellate counsel was ineffective for failing to "supplement [Movant's] petition [for writ of certiorari] in light of the newly published *Wooden* decision," *id.* at 25; (7) counsel was ineffective for failing "to hire a DNA expert to properly research, investigate and to prepare Mr. Leonard's case for trial," *id.* at 27; (8) the trial court violated Movant's due process rights by "erroneously sentenc[ing] Mr. Leonard beyond the statutory maximum based on non-qualifying prior predicate offenses," *id.* at 30; and (9) Movant's statute of conviction, 18 U.S.C. § 922(g), has been rendered unconstitutional by the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Suppl. Mot. at 4.

Many of Movant's claims significantly overlap with one another and rely on the same underlying legal principles. To facilitate an orderly review of Movant's claims, the Court will address all of the relevant claims together. First, the Court will take Issues One, Two, and Three together since they each challenge the categorization of Movant's state-court convictions for the sale of cocaine as "serious drug offenses." Next, the Court will review Issues Four, Five, Six, and Eight since they are all dependent on the Supreme Court's holding in *Wooden*. After that, the Court will consider Issue Seven on its own since it is the only claim involving the DNA evidence presented at trial. Finally, the Court will dispose of Movant's Supplemental Motion which alleges an entirely new constitutional argument based on the Supreme Court's decision in *Bruen*.

### A. Movant's Prior Drug Convictions: Issues One, Two, and Three

Movant's first three "issues" concern the Court's classification of his three state-court convictions for violating Fla. Stat. § 893.13 as "serious drug offenses." According to Movant, the Eleventh Circuit's decision in *United States v. Jackson* (*Jackson I*), 36 F.4th 1294 (11th Cir. 2022),

*vacated*, No. 21-13963, 2022 WL 4959314, at *1 (11th Cir. Sept. 8, 2022), declassified § 893.13 as a "serious drug offense" because the state statute criminalized certain conduct that was not "set out in [ACCA]'s 'serious drug offense' definition." Mot. at 15. Using *Jackson I* as his lodestar, Movant also alleges in Issues Two and Three that counsel was ineffective for failing to object (at sentencing and while on appeal) to Movant's armed career criminal enhancement for the reasons set forth in *Jackson I. See id.* at 17–20. The Government agrees that, had *Jackson I* remained good law, it would "have [been] compelled . . . to agree that Leonard no longer qualified for an ACCA-enhanced sentence and should be resentenced." Resp. at 6. But, the Government explains, the Eleventh Circuit *sua sponte* vacated *Jackson I* and issued a new opinion that came to the opposite holding as *Jackson I. See id.* at 7; *accord United States v. Jackson* (*Jackson II*), 55 F.4th 846, 861–62 (11th Cir. 2022) ("We therefore conclude that Jackson's 1998 and 2004 Section 893.13(1) cocaine convictions qualify as 'serious drug offense[s]' under 18 U.S.C. § 924(e)(1)." (alteration in original)), *petition for cert. filed*, No. 22-6640 (U.S. Jan. 26, 2023). Movant, to his credit, appears to acknowledge that he can no longer rely on the claims he brought pursuant to *Jackson I. See* Reply at 2 (recognizing that "the Eleventh Circuit's decision in *United States v. Jackson* . . . [has] since been vacated and superseded." (parentheticals omitted)).

The Government is correct that *Jackson II* conclusively forecloses relief on Issues One, Two, and Three. The Court will briefly explain why. "To determine whether a prior conviction under state law qualifies as a 'serious drug offense,' [the court] focus[es] on 'the statutory definition of the state offense at issue, rather than the facts underlying the defendant's conviction.' We call this the 'categorical approach.'" *Jackson II*, 55 F.4th at 850 (quoting *United States v. Conage*, 976 F.3d 1244, 1250 (11th Cir. 2020)). "Under this approach, a state conviction cannot serve as an ACCA predicate offense if the state law under which the conviction occurred is

categorically broader—that is, if it punishes more conduct—than ACCA's definition of a 'serious drug offense.'" *Id.* The key question—as described by the Eleventh Circuit in *Jackson II*—is "which version of the federal controlled-substances schedules ACCA's definition of 'serious drug offense' incorporates: the one in place at the time of the prior state conviction, or the one in place at the time the defendant committed the present federal firearm offense." *Id.* at 851. While the Eleventh Circuit originally held "the version in effect at the time of [the defendant's] firearm possession for which he is being sentenced" controls, *Jackson I*, 36 F.4th at 1300, it later disavowed this stance and came to the opposite conclusion, *see Jackson II*, 55 F.4th at 859 ("[W]e must read that definition to incorporate the version of the federal controlled-substances schedules in effect when Jackson's prior state convictions occurred.").

This rapid change in the law defeats Movant's first three claims. At the time Movant committed his cocaine-related offenses, Florida law's definition of "cocaine" and its relevant "stereoisomers, . . . salt[s], compound[s], or derivative[s]" included a substance known as "ioflupane". Fla. Stat. § 893.03(2)(a)(4) (2007); *see generally Jackson I*, 36 F.4th at 1302–03. Although ioflupane was once a controlled substance under federal and state law, the federal government removed ioflupane from the federal controlled-substance schedules on <u>September 11, 2015</u>, after researchers determined "that ioflupane has value in potentially diagnosing Parkinson's Disease." *Jackson I*, 36 F.4th at 1302 (citing Schedules of Controlled Substances: Removal of [123 l] Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54,715, 54,716–17 (Sept. 11, 2015) (codified at 21 C.F.R. § 1308.12(b)(4)). The Florida Legislature followed suit on July 1, 2017. *See id.* at 1303. The practical effect of all this is that a defendant convicted of violating Fla. Stat. § 893.13 for selling cocaine <u>may not</u> have committed a "serious drug offense" under § 924(e) because federal and Florida law disagreed for a period of time on whether the sale

of ioflupane was illegal.  *See id.* at 1304 ("Because ioflupane was not a 'controlled substance' under federal law when Jackson committed his § 922(g) firearm-possession offense, his state offenses did not 'necessarily entail' the conduct set out in ACCA's 'serious drug offense' definition.  As a result, Jackson's cocaine-related prior convictions do not qualify under ACCA as "serious drug offenses." (alteration accepted) (quoting *Shular v. United States*, 140 S. Ct. 779, 784 (2020))).

It is undisputed that Movant committed all three state drug offenses between 2004 and 2007—many years before the federal government removed ioflupane from Schedule II, *see* Mot. at 13, but Movant did not commit the instant offense in this case until May 18, 2018—after the sale of ioflupane was decriminalized, *see* Superseding Indictment, *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. May 24, 2019), ECF No. 70 at 3.  Under *Jackson I*, these past state convictions would not have been considered "serious drug offenses" because, at the time Movant "possessed the firearm that undergirds his federal conviction," the federal government no longer criminalized the possession of ioflupane.  *Jackson I*, 36 F.4th at 1300.  However, since the State of Florida and the federal government both criminalized the sale of ioflupane at the time Movant was originally convicted of the state drug offenses, the Eleventh Circuit's current precedent holds that all three of these convictions are serious drug offenses under § 924(e).  *See Jackson II*, 55 F.4th at 859 ("In sum, then, Section 924(e)'s requirements all turn on the law in effect when the defendant's prior convictions occurred.").  Since *Jackson II* conclusively rebuts Movant's argument that "his prior cocaine-related § 893.13 offense[s] are not 'serious drug offenses,'" the Court must deny all three of Movant's claims that relied on *Jackson I*.  Mot. at 13; *see also Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) ("Chandler's [counsel] was not ineffective for failing to raise a nonmeritorious issue.").

**B. Challenge to § 924(e)'s "Occasion Clause": Issues Four, Five, Six, and Eight**

Movant's next group of claims argue that "Mr. Leonard does not have at least three different qualifying predicate 924(e) convictions committed on occasions different from one another" because the three "serious drug offenses" should be grouped together as one unitary offense. Mot. at 22. Section 924(e) requires that each prior conviction used as the basis for an ACCA enhancement must have been "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). This requirement is met when the convictions are for "temporally distinct" crimes. *United States v. Sneed*, 600 F.3d 1326, 1329–30 (11th Cir. 2010). In fact, the Eleventh Circuit has already held that each of Movant's three convictions are temporally distinct and were properly used to enhance Movant's sentence. *See Leonard*, 4 F.4th at 1149 ("Here, Leonard's three offenses occurred on different days and were separated by intervening arrests. It does not matter that he was sentenced on the same day for the three crimes. So because the three crimes were temporally distinct for ACCA purposes, the district court did not err in designating Leonard an armed career criminal." (citation omitted)).

Movant now believes that *Wooden* (and particularly Justice Gorsuch's concurring opinion) has rendered § 924(e)'s "Occasions Clause" unconstitutionally vague; thus, the Eleventh Circuit's opinion on this issue was ostensibly abrogated. *See* Mot. at 24 ("Following *Wooden*, the rule of lenity has a critical role to play in cases under 924(e)'s Occasions Clause. That's because the Occasions Clause contains little guidance, and reasonable doubt about its application will often arise."); Reply at 2 ("[T]here is no clear definition on what constitutes a[] separate occasion."). The Court disagrees. *Wooden* concerned the application of the "Occasions Clause" to a defendant who "burglarized ten storage units on a single occasion, even though his criminal activity resulted in double-digit convictions." *Wooden*, 142 S. Ct. at 1071. Although the defendant in *Wooden* was

convicted of ten counts of burglary (since he burglarized ten different storage units), the Court held that this one-night crime spree counted as one "offense" for ACCA purposes because the crime occurred "on a single night, in a single uninterrupted course of conduct." *Id.* The Supreme Court ultimately decided that whether each offense takes place on different occasions can be divined using a "multi-factored test" which takes into account "a range of circumstances" such as whether the offenses are "separated by substantial gaps in time," the "[p]roximity of location" where the offenses occurred, and "the character and relationship of the offenses." *Id.* at 1070–71.

While there may be some instances where "identifying episodes of criminal activity" is a difficult inquiry, Movant's case is not one of them. *Id.* at 1071. Movant's three different sales of crack cocaine took place on three different days over the course of <u>three years</u>. *See* PSI ¶¶ 41–43 (listing the dates of the cocaine sales as March 24, 2004, September 17, 2007, and December 12, 2007). The *Wooden* Court held that crimes that take place on different days are properly considered separate offenses under § 924(e). *See Wooden*, 142 S. Ct. at 1071 ("In many cases, a single factor—especially of time or place—can decisively differentiate occasions. Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'"). In fact, the Eleventh Circuit recently confirmed that "discrete drug transactions that occurred on different days" are "offenses [that] occurred on different occasions" even when considering the *Wooden* decision. *United States v. McCall*, No. 18-15229, 2023 WL 2128304, at *6 (11th Cir. Feb. 21, 2023).[4] Since each one of

---

[4] Movant's vagueness argument does not change the Court's analysis because it suffers from at least three flaws. *First*, Justice Gorsuch's concurring opinion, which invokes concepts such as vagueness and the rule of lenity, is not binding on this Court; concurring opinions—even from justices of the United States Supreme Court—are not precedential. *See Horton v. Zant*, 941 F.2d 1449, 1464 n.32 (11th Cir. 1991) ("Plurality opinions are only persuasive authority; they are not binding on this Court."); *see also Wooden*, 142 S. Ct. at 1076 (Kavanaugh, J., concurring) ("In sum, I would not invite the inconsistency, unpredictability, and unfairness that would result from expanding the rule of lenity beyond its very limited place in the Court's case law."). *Second*, Justice Gorsuch's opinion does not help Movant since he too

Movant's three "serious drug offenses" took place on different occasions, the sentencing court properly considered each conviction to be a separate ACCA predicate offense and correctly applied the armed career criminal enhancement when sentencing Movant. *See* 18 U.S.C. § 924(e)(1). As a result, Movant's counsel also could not have been ineffective for failing to raise this meritless argument. *See Chandler*, 240 F.3d at 917. Accordingly, the Court denies all grounds for relief in the Motion related to the imposition of an enhanced sentence under ACCA.

### C. Counsel's Failure to Retain a DNA Expert: Issue Seven

Movant's next ground for relief contains three sub-parts, each of which concern the DNA evidence presented at trial. First, Movant contends that counsel should have hired a DNA expert to "review the government's [DNA] expert['s] protocols." Mot. at 27. Movant points to certain motions made by trial counsel before trial as proof that "trial counsel needed his own [DNA] expert." *Id.* Second, Movant alleges that trial counsel should have filed a motion to suppress "the DNA results before trial" because Movant "discovered several flaws in the lab reports." *Id.* Movant also insists that these flaws would have been revealed if defense counsel demanded a *Daubert*[5] hearing to contest the DNA expert's report. *Id.* at 27–28. Third, Movant argues that counsel was ineffective for failing to call Facundo Torino, "the criminalist who generated the serology results," because this allowed "the government to call a witness who did not generate the

---

agrees that crimes that take place on different days are clearly separate occasions under § 924(e)(1). *See Wooden*, 142 S. Ct. at 1080 (Gorsuch, J., concurring) ("Who doubts that . . . two murders separated by years and miles take place on separate occasions?"). *Third*, and most importantly, the Eleventh Circuit has already rejected the argument that "the occasions clause is unconstitutionally vague." *See McCall*, 2023 WL 2128304, at *7 ("The occasions clause captures offenses 'committed on occasions different from one another.' This gives fair notice that qualifying offenses committed on different occasions will lead to a sentencing enhancement. . . . And the occasions clause does not encourage arbitrary or discriminatory enforcement because courts must apply *Wooden*'s multi-factor test. The clause is not unconstitutionally vague.") (internal citations omitted).

[5] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

lab results" (*i.e.*, the Government's DNA expert) in violation of the Confrontation Clause.  *Id.* at

29.  The Government responds that (1) "the decision not to call a DNA expert or Mr. Torino was

not error, but sound strategic judgment," (2) "Mr. Torino was not involved in generating the report

or otherwise determining that the DNA on the firearm matched Leonard's DNA," and (3) "[t]here

is no evidence that any expert would have a basis to challenge the DNA analysis done in this

case[.]"  Resp. at 10.

It is not a surprise that Movant has sought collateral review of the DNA evidence against

him; after all, the testimony of the Government's DNA expert was compelling evidence that

Movant illegally possessed a firearm.  *See Leonard*, 4 F.4th at 1140 ("An expert later testified that

Leonard was a 'major contributor' to the DNA recovered off the firearm; the likelihood of the

DNA matching another male profile was 1 in 18.02 *trillion*.").  That said, Movant has not identified

a meritorious basis for trial counsel to challenge the DNA evidence.  The Court will address each

of Movant's sub-claims in reverse order.

To start, counsel's failure to call Mr. Torino as a witness at trial neither violated the

Confrontation Clause nor was harmful to Movant's defense.  The unrebutted testimony at trial was

that Mr. Torino had nothing to do with the DNA analysis that the Government's expert, Cara

Lopez, conducted:

> [Prosecutor]:  Now prior to your involvement in this case, did
> anyone else conduct DNA analysis on those items?
>
> [Ms. Lopez]:  No one else did.
>
> Q:  Did anyone else touch those items throughout the process?
>
> A:  So prior to the DNA analysis being started, we have a serologist.
> The serologist would be the individual that actually looked at the
> physical packages that I just had in front of me, the three manila
> envelopes as well as the brown bag. They would retain the inner
> contents, so the swab from the firearm, the swab from the front sight,

> and the swab from the trigger, as well as the oral standard from Mr.
> Leonard was retained by our serologist, [Mr. Torino].  He was the
> individual that retained those swabs that were just handed to me.
>
> Q: And is it customary to have different people conduct or
> participate in the DNA analysis process?
>
> A:  It's not unusual to have more than one individual either doing
> the serology separate from the DNA process as well as either having
> multiple DNA analysts doing the technical aspect, the bench work,
> but only one analyst would do the interpretation and generating the
> report.

Day 2 Trial Tr. ("Lopez Test."), *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. July 8,

2019), ECF No. 149 at 129:18–130:13.  In short, Movant's belief that "Mr. Torino was the only

person who could discuss how the results was [sic] generated" and that "[t]he expert who testified

at trial reviewed the results that Mr. Torino had prepared" is simply wrong.  Mot. at 29.  Movant's

trial counsel certainly could not have been ineffective for failing to call a witness that was

irrelevant to the Government's DNA analysis.  *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297

(11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to

perform a futile act, one that would not have gotten his client any relief."); *see also, e.g.*, *Fitchett

v. Perry*, 644 F. App'x 485, 490 (6th Cir. 2016) ("Viewing the circumstances from counsel's

perspective, Dawkin's potential testimony was likely irrelevant and inadmissible, thus warranting

no further investigation.").

    Next, the Court will address Movant's contention that defense counsel should have

prevented the introduction of the Government's DNA analysis—either by filing a motion to

suppress or demanding that the trial court hold a *Daubert* hearing.  According to Movant, the DNA

analysis conducted by Ms. Lopez contained "several flaws," but his Motion only identifies three:

the report was inadmissible "based on *United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018),"

Mot. at 28; the analysis improperly "amplified at 21 loci's [sic] instead of 23 loci," *id.*; and there

were different lab reports on different days with inconsistent results, *id.* at 29; *see also* Reply at 5 ("Mr. Leonard's trial attorney [failed to] address[ ] why the lab results differed on different days, or why further test[s] were ran after the first results showed Mr. Leonard's DNA was not a match.").

The alleged "errors" identified by Movant do not impact the credibility of the DNA expert or her analysis.  Ms. Lopez testified that she analyzed the DNA using "short tandem repeat analysis" ("STR") which involves analyzing and comparing alleles that are located at "21 polymorphic loci" which "vary amongst individuals" on the subject DNA strand.  Lopez Test. 120:25–121:17.  The case Movant relies on, *Barton*, underscuts Movant's argument, as it held that STR is "a method used by every accredited laboratory in the country" and that its reliability as a method of DNA analysis "is not in dispute."  909 F.3d at 1328, 1332.[6]  Nor were the lab reports underpinning the DNA analysis inconsistent.  Ms. Lopez explained that there were three different lab reports because she analyzed three separate swabs that were taken from different portions of the firearm.  *See* Lopez Test. 132:1–5 ("[Q:] From each of the swabs, how many DNA profiles did you obtain?  A: Each individual item, the swab from the firearm and the swab from the trigger and the swab from the front sight generated DNA profiles.").  While Ms. Lopez admitted that, when analyzing the swab of the trigger, she "was not able to make a comparison to that of Mr. Leonard[,]" *id.* 133:12–13, Movant is wrong to suggest that this result means that his DNA was not present on the trigger, *see id.* 133:17–19 ("[T]his would be considered an unresolvable or inconclusive where I can't identify the individual contributors in that mixture.").  In sum, none of

---

[6] Insofar as Movant argues that Ms. Lopez's use of 21 loci—instead of 23 loci—rendered her STR analysis unreliable, this argument is also defeated by *Barton*, as the Eleventh Circuit recognized that "[f]orensic DNA analysis focuses on these loci and alleles [are] known to vary widely[,]" 909 F.3d at 1327, and at least one court has held that a STR analysis which only relied on nine loci was sufficiently reliable to be admissible at trial, *see Commonwealth v. Rosier*, 685 N.E.2d 739, 742–43 (Mass. 1997); *see also United States v. Ewell*, 252 F. Supp. 2d 104, 112 (D.N.J. 2003) (finding the same, but for "thirteen STR loci").

the "flaws" Movant identifies weaken Ms. Lopez's ultimate conclusion that "the odds of the DNA [found on the firearm] being someone unrelated to Mr. Leonard is one in 18.0 trillion." *Id.* 135:21–22.

Finally, the record refutes Movant's contention that "[t]rial counsel failed to hire his own [DNA] expert[.]" Mot. at 27.  Although it is true that counsel never called a DNA expert at trial, his own pleadings unambiguously state that counsel "engaged the services of a CJA defense DNA expert."  Mot. to Continue Trial, *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. June 6, 2019), ECF No. 81 at 1.  Instead, Movant's claim must be reconstrued as an argument that trial counsel unreasonably delayed hiring and preparing this DNA expert "to rebut the government's expert at trial." Mot. at 27.  But Movant presents no evidence, other than his own speculation, that any DNA expert could have rebutted Ms. Lopez's DNA analysis since, for the reasons stated above, the analysis was plainly reliable.  *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful.  This kind of speculation is insufficient to carry the burden of a habeas corpus petitioner." (citation and internal quotation marks omitted)).

Defense counsel undoubtedly knew this as well, so he devised an entirely reasonable alternative strategy to use the DNA analysis to his advantage: acknowledge that Movant's DNA was on the firearm but then use Ms. Lopez's expertise to confirm that Movant's DNA could have ended up on the firearm without Movant ever touching it.  *See* Lopez Test. 152:20–153:24 (agreeing that DNA from a towel could be transferred to another item "even though I didn't touch that item that the towel touched"); *see also* Day 3 Trial Tr., *United States v. Leonard*, No. 18-CR-20743 (S.D. Fla. July 8, 2019), ECF No. 150 at 136:23–137:12 ("The DNA of Mr. Leonard was not on the trigger or on the sight, but just from a general swab.  So, remember, this idea of transfer

. . . . [a] referee could have the DNA of LeBron James and Dwyane Wade on his hands, but the referee has touched neither one of them.").  Though the jury clearly did not agree with defense counsel's argument, that does not mean that counsel's strategic decision was unreasonable, especially when he was placed in the unenviable position of trying to rebut the Government's extremely powerful DNA evidence.  *See Chandler*, 218 F.3d at 1315 ("[F]or a petitioner to show that [counsel's] conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); *see also Esposito v. Warden*, 818 F. App'x 962, 971 (11th Cir. 2020) ("Counsel were permitted to make the strategic decision not to call an expert and instead challenge the state's forensic evidence through other means, and we cannot now second guess that strategy.").

The Court is unable to find any flaw with the Government's DNA analysis that renders it either unreliable or inadmissible.  Since the DNA analysis was proper, counsel was not ineffective for failing to object or otherwise challenge this evidence in the ways Movant suggests.  *See Chandler*, 240 F.3d at 917.  Finding no error, the Court denies Issue Seven of the Motion.

### D.  Constitutional Challenge to § 922(g): Movant's Supplemental Motion

Movant's last argument is that the Court must vacate his conviction since 18 U.S.C. § 922(g)(1)—which criminalizes the possession of a firearm by a convicted felon—violates the Second Amendment.  Movant contends that, if the Court applies the new standard for Second Amendment claims set forth in *Bruen*, § 922(g)(1) must be found unconstitutional since it "is not consistent with the Nation's tradition of firearms regulation."  Suppl. Mot. at 4.  The Supreme Court in *Bruen* confirmed "that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by

demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  142 S. Ct. at 2129–30.

 *Bruen* may ultimately impact dozens of firearms regulations around the country, but § 922(g)(1) is not one of them.  The Supreme Court has repeatedly confirmed that the Second Amendment allows the government to prohibit convicted felons from possessing firearms.  *See id.* at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." (emphasis added)); *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]"); *see also United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) ("And as both the Supreme Court and this Court have observed, even individuals who are indisputably part of 'the people,' such as dangerous felons and those suffering from mental illness, might not partake of that pre-existing right and, therefore, may be prohibited from possessing firearms without offending the Second Amendment."); *Orrego Goez v. United States*, No. 22-CV-23962, 2023 WL 2045970, at *4 (S.D. Fla. Feb. 16, 2023) ("Indeed, no court has disputed the straightforward proposition that 'persons who have committed serious crimes forfeit the right to possess firearms much the way they forfeit other civil liberties, including fundamental constitutional rights.'") (quoting *Binderup v. Att'y Gen., U.S. of Am.*, 836 F.3d 336, 349 (3d Cir. 2016) (en banc)).

 Movant is not the first person to challenge the constitutionality of § 922(g)(1) after the Supreme Court decided *Bruen*, but § 922(g)(1)'s constitutionality has still been repeatedly affirmed.  *See, e.g.*, *United States v. Charles*, __ F. Supp. 3d ___, 2022 WL 4913900, at *11 (W.D.

Tex. Oct. 3, 2022) ("Through the historical analogies above, the Court's inquiry is clear—this Nation has a historical tradition of excluding felons and those who abuse their rights to commit violence from the rights and powers of 'the people.' . . . Thus, § 922(g)(1) is constitutional on its face and as applied to Defendant."); *United States v. Delpriore*, __ F. Supp. 3d ___, 2022 WL 17490771, at *3 (D. Alaska Oct. 4, 2022) ("This Court has not identified any district court that has found the federal felon in possession statutes to be unconstitutional when applying the analytical framework set forth in *Bruen*."); *United States v. Price*, __ F. Supp. 3d ___, 2022 WL 6968457, at *9 (S.D. W. Va. Oct. 12, 2022) ("In keeping with Justice Thomas' insistence that 'law-abiding' citizens are protected by the Second Amendment, Section 922(g)(1)—which aims to ensure that those bearing arms are law-abiding, responsible citizens—accords with the Second Amendment."); *see also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, [561 U.S. 742 (2010)], about restrictions that may be imposed on the possession or carrying of guns."). In short, the Court finds that § 922(g)(1) is still constitutional, even under the new standard set forth in *Bruen*.[7]

---

[7]   There has, admittedly, been some debate about whether the Second Amendment allows for the Government to forbid *all* felons from possessing firearms. *See, e.g.*, *Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting) ("History does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons."); *Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 923 (3d Cir. 2020) (Bibas, J., dissenting) ("Disarming all felons not only ignores history, but also gives legislatures unfettered power over a fundamental right."). But even this more robust view of the Second Amendment still provides "that legislatures have the power to prohibit *dangerous people* from possessing guns." *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting) (emphasis added); *see also Folatjar*, 980 F.3d at 912 (Bibas, J., dissenting) ("[The Second Amendment's historical] limits protect us from felons, but only if they are dangerous."). So, while it is conceivable that § 922(g)(1) may be unconstitutional as applied to specific felons with non-violent and/or limited criminal histories, Movant has been convicted of multiple felonies—many of which involve violence, the use of firearms, and/or the sale of illicit drugs. *See generally* PSI at ¶¶ 28–47 (describing Movant's criminal record). The Court has no doubt that Movant's extensive criminal past is sufficient to classify him as "dangerous" for Second Amendment purposes. *See Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting) ("True, legislatures may use careful rules of thumb to classify some

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." (cleaned up)).

## CERTIFICATE OF APPEALABILITY

A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a postconviction movant must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would debate either "whether the [motion] states a valid claim of the denial of a constitutional right" or "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

Here, reasonable jurists would not find the correctness of the Court's rulings debatable. Accordingly, a COA is denied and shall not issue.

## CONCLUSION

Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that the Motion to Vacate [ECF No. 1] and the Supplemental Motion [ECF No. 14] are both hereby **DENIED**. Movant's unsigned supplemental motion [ECF No. 12] is **STRICKEN**. All other pending motions are **DENIED as moot**. Any

---

felonies as dangerous. For instance, though residential burglary and drug dealing are not necessarily violent, they are dangerous because they often lead to violence. Disarming burglars and drug dealers makes sense because their past crimes were inherently dangerous.").

demands for an evidentiary hearing are **DENIED**, and a certificate of appealability shall **NOT ISSUE**.  The Clerk is directed to **CLOSE** this case.

   **DONE AND ORDERED** in Miami, Florida, on this 9th day of March, 2023.

             _____

             **RODOLFO A. RUIZ II**
             **UNITED STATES DISTRICT JUDGE**